## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

WILLIAM GLENN PICKARD,
     Plaintiff

vs.

THE CITY OF SANFORD, THE STATE OF
FLORIDA, PHIL ARCHER, in his capacity as
the State Attorney for the 18th Circuit, PHIL ARCHER,
individually, DANIEL HERNANDEZ, in his capacity as
assistant State Attorney, DANIEL HERNANDEZ,
individually, GRANT MALLOY, as clerk of the Court
for the 18th Circuit, GRANT MALLOY, individually,
OLIVIA YERGEY, as assistant State Attorney, OLIVIA
YERGERY, individually, DAVID WHATLEY, as
Supervisor of the Assistant State Attorneys, DAVID
WHATLEY, individually, JASON BOWEN, in his
Capacity as investigator, JASON BOWEN, individually,
ROBERT DURKEE, in his capacity as an officer of the City
Of Sanford, ROBERT DURKEE, individually, CECIL
SMITH, in his capacity as Chief of Police, and CECIL
SMITH, individually, LAURA KELL CORREIA,
individually and KAYLA KELL, individually

                                       /

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, William Glenn Pickard, and hereby files this Complaint for

Relief and sues Defendants, THE CITY OF SANFORD ("City of Sanford" or "Sanford Police

Department"); THE STATE OF FLORIDA ("Florida"); PHIL ARCHER, in his capacity as State

Attorney for the 18th Circuit, PHIL ARCHER, individually ("PHIL ARCHER"); DANIEL

HERNANDEZ, in his capacity as Assistant State Attorney, DANIEL HERNANDEZ, individually,

("HERNANDEZ"); GRANT MALLOY, as clerk of the Court for the 18th Circuit, GRANT

MALLOY, individually, (hereinafter "GRANT MALLOY"), OLIVIA YERGEY, as Assistant

State Attorney, OLIVIA YERGERY, individually, (hereinafter "OLIVIA YERGEY"), DAVID

WHATLEY, as Supervisor of the Assistant State Attorneys, DAVID WHATLEY, individually

(hereinafter "DAVID WHATLEY"), JASON BOWEN, in his capacity as investigator, JASON

BOWEN, individually, (hereinafter "JASON BOWEN"), ROBERT DURKEE, in his capacity as

an officer of the City of Sanford, ROBERT DURKEE, individually (hereinafter "ROBERT

DURKEE"), CECIL SMITH, in his capacity as Chief of Police, CECIL SMITH, individually,

(hereinafter "CECIL SMITH"), LAURA KELL CORREIA, individually (Correia"), and KAYlA

KELL, individually (KELL) (all Defendants collectively hereinafter referred to as "Defendants")

and herein seeks damages against Defendants and for any other and further relief as this Court

deems just and proper, and states as follows:

PARTIES AND JURISDICTION

1.      Plaintiff, WILLIAM GLENN PICKARD, is a resident of Lake Mary, Florida.

2.      Defendant, THE CITY OF SANFORD, is a municipal corporation of the State of

Florida, situated in Seminole County, Florida, and through its law enforcement agency, the Sanford

Police Department, is responsible for the policies and conduct of the officers of the Sanford Police

Department.

3.      Defendant, THE STATE OF FLORIDA, is a State responsible corporately for the

actions of its agents.

4.      Defendant, PHIL ARCHER, is in charge of prosecutions in Seminole County,

Florida and is responsible for the actions of his agents.  Defendant, PHIL ARCHER, is also

responsible for his own duties, both direct and supervisory.  To the extent that his actions are

deemed outside the scope of his employment, PHIL ARCHER is personally liable.    PHIL

ARCHER is sui juris.

5.      Defendant, DANIEL HERNANDEZ, is an assistant State Attorney who is responsible for his direct actions and for the actions of any party/parties that he supervises. To the extent that his actions are deemed outside the scope of his employment, DANIEL HERNANDEZ is personally liable. DANIEL HERNANDEZ is sui juris.

6.      Defendant, GRANT MALLOY, is clerk of the Court of the 18th Circuit and in such capacity is responsible for his direct actions and those of any party/parties that he supervisors. To the extent that his actions are deemed outside the scope of his employment, GRANT MALLOY is personally liable. GRANT MALLOY is sui juris.

7.      Defendant, OLIVIA YERGEY, is an assistant State Attorney who is responsible for her direct actions and for the actions of any party/parties that she supervises. To the extent that her actions are deemed outside the scope of her employment, OLIVIA YERGEY is personally liable. OLIVIA YERGEY is sui juris.

8.      Defendant, DAVID WHATLEY, is the Supervisor of the Assistant State Attorneys and responds, upon information and belief, to PHIL ARCHER.  Defendant DAVID WHATLEY is responsible for his direct actions and for the actions of any party/parties that he supervises.  To the extent that his actions are deemed outside the scope of his employment, DAVID WHATLEY is personally liable.  DAVID WHATLEY is sui juris.

9.      Defendant, JASON BOWEN is a major crimes investigator for the City of Sanford. Defendant JASON BOWEN is responsible for his direct actions and for the actions of any party/parties that he supervises.  To the extent that his actions are deemed outside the scope of his employment, JASON BOWEN is personally responsible.  JASON BOWEN is sui juris.

10.     Defendant, ROBERT DURKE, is a police officer who worked for the Sanford Police Department during all times relevant. Defendant DURKE was and, to the best of knowledge

of the Plaintiff, is employed by the Sanford Police Department, and has and is working under the direction and supervision of the Sanford Police Department. DURKE is over the age of eighteen (18) years old. Defendant DURKE is being sued in his individual capacity.

11.     Defendant, CECIL SMITH, is the Chief of Police of the Sanford Police Department, during all times relevant. Defendant CECIL SMITH was, and to the best of knowledge of the Plaintiff, is employed by the Sanford Police Department, and has and is working under the direction and supervision of the Sanford Police Department. Defendant CECIL SMITH is responsible for his actions and for the actions of any party/parties that he supervises. To the extent that his actions are deemed outside the scope of his employment, CECIL SMITH is personally responsible. CECIL SMITH is sui juris.

12.     Defendant, LAURA KELL CORREIA, is the former spouse of Plaintiff and is an individual residing in Lake Mary, Florida. LAURA KELL CORREIA is sui juris.

13.     Defendant, KAYLA KELL is the former step-daughter of Plaintiff, and an individual residing in Lake Mary, Florida. KAYLA KELL is sui juris.

14.     Defendants CITY OF SANFORD, ROBERT DURKEE, JASON BOWEN, and CECIL SMITH are, together, referred to as the "CITY OF SANFORD DEFENDANTS" given the commonality of their actions in the context of this suit.

15.     Defendants, STATE OF FLORIDA, PHIL ARCHER, DANIEL HERNANDEZ, GRANT MALLOY, OLIVIA YERGEY, and DAVID WHATLEY, are referred to, together, as the "State Defendants" given the commonality of their actions in the context of this suit.

16.     This action is proper in the Middle District of Florida as original jurisdiction is conferred upon this Court by the fact that Plaintiff's claims of violations arise under the laws of the United States. Specifically, Plaintiff's Complaint is based upon numerous violations of

Plaintiff's civil rights in violation of 42 USC Section 1983 that occurred inside the territory of the Middle District of Florida.

17.    Venue is appropriate in the Orlando Division based on the fact that all actions giving rise to this cause of action occurred in Seminole County, Florida.

18.    This is an action brought pursuant to 42 USC Section 1983, which provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory....subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or others proper proceeding for redress."

19.    Pursuant to Section 768.28(6)(a) *Florida Statutes,* Plaintiff has notified Defendants, CECIL SMITH, Chief of Police, in his official capacity as Chief of Police of Sanford Police Department; CITY OF SANFORD POLICE DEPARTMENT; THE CITY OF SANFORD, and THE STATE OF FLORIDA of his claims six months or more prior to filing of this action and said claims were not resolved.    Plaintiff has fully complied with Section 768.28(6)(a) including providing notice, and service, if applicable, to the Florida Department of Financial Services.

20.    All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

## GENERAL ALLEGATIONS

21.    This matter stems from a series of attempts to eject the Plaintiff from Plaintiffs home, destroy Plaintiff's livelihood, and deprive Plaintiff of Plaintiff's civil rights by CORREIA working in concert with the other Defendants under color of law.

22.     Plaintiff and CORREIA had been married for two years, and had been involved in a relationship for thirteen years.

23.     After marriage and in the months leading up to the incident of December 12, 2014 Plaintiff and CORREIA increasingly fought over matters concerning CORREIA'S children.

24.     CORREIA engaged in numerous illegal activities with KELL at Plaintiff and CORREIA's residence.   In particular, CORREIA:

-        knowingly and purposefully made alcohol available to KELL and KELL's boyfriend, despite the fact that both were underage at all times relevant.

-        knowingly and purposefully encouraging KELL to engage in sexual relations with KELL's boyfriend, despite the fact that both were underage at the time.

25.     CORREIA has maintained that KELL should have a right to "party it up" while she is young despite the laws on the books pertaining to minors.   As the following events will demonstrate, CORREIA encouraged KELL to engage in risky behavior.   CORREIA would repeatedly try to work out an arrangement with Plaintiff whereby KELL would be permitted to engage in the activities as mentioned above until such time as she turned 18 and could engage in such activities without interference.   CORREIA would repeatedly propose that Plaintiff reconcile with her after this two year period.

26.     It is unclear why CORREIA would encourage KELL to engage in risky behavior. A psychologist may recommend that CORREIA was trying to make up for what she perceived as a deficiency in her upbringing.   Regardless, CORREIA would ruthlessly pursue her agenda, and

was prepared to, and would pursue several attempts to deprive Plaintiff of his livelihood, liberty, and good reputation in order to effect the same.

27.    CORREIA has pursued this matter through several avenues of litigation, and over a period of several years.  Each action tended to commence with the onset of the Holiday Season. This included the criminal action against Plaintiff discussed more fully below.  In that action, the State of Florida filed around 8000 pages of texts from CORREIA.   Plaintiff has reviewed and discovered additional information concerning CORREIA'S illegal activities as a result of discovery provided in a separate case.  These texts prove that CORREIA, by admission, was also engaged in permitting *illegal drugs* to CORREIA'S daughter, to wit, psychedelic mushrooms. Further CORREIA alluded to being a party to contact in order to obtain illegal substances in her text messages.   To be clear, Plaintiff did not know about this at the time of the events in question and has only been made aware of this recently as a result of discovery.

28.    Increasingly Plaintiff became concerned about CORREIA's illegal behavior with her daughter and became worried about his risk because of said behavior.  Plaintiff brought his concerns to CORREIA who stated that she wanted him out of her daughter's life for the next two (2) years, at which point the daughter would no longer be a minor and would not be subject to any restrictions from Plaintiff.

29.    Plaintiff was unwilling to participate in CORREIA's illegal activity by omission. Unfortunately, the response from CORREIA was to simply attempt to remove Plaintiff from her life by filing a series of frivolous charges against Plaintiff.   Plaintiff was subjected to numerous

calls to police departments of several municipalities.   All of these calls were undertaken with the object and purpose of creating a false criminal record against Plaintiff.

30.     The actions of CORREIA were undertaken to restrict what Plaintiff might have done to interfere in CORREIA's continuing illegal behavior.

31.     Unfortunately, rather than attempt to restrain the behavior of CORREIA and KELL, the City of Sanford defendants ultimately would attempt to aggressively pursue Plaintiff and to argue CORREIA and KELL's case by proxy.

32.     While this appears at first counterintuitive, and perhaps one might be tempted to infer that the assertion is a mere manifestation of "sour grapes" on the part of the Plaintiff, the picture becomes clearer when the Plaintiff's personal history is taken into account.

33.     The Plaintiff was an employee for the State of Florida for many years.

34.     The Plaintiff was also a whistleblower, and in such capacity was, by definition in charge of bringing corrupt practices to light.

35.     As a former state employee and a whistleblower, Plaintiff's reputation was extremely important to all aspects of his work and career.

36.     As a former state employee and whistleblower, Plaintiff also was and is equipped with a series of skills and a portfolio of knowledge that is targeted at bringing questionable activities to light.

37.     In other words, the Plaintiff was aware of when his rights were being violated, and had the ability to properly document all violations.

38.     This matter would start with a fairly standard battery case.   However, the errors made in that battery case would result in a continued series of cover-ups and attempts at pay back

by the State and City authorities that would ultimately spiral into a multi-year struggle and an unjust jail sentence for the Plaintiff. The details of this escalation are given more fully below.

*The Battery case and First Attempted Injunction*

39. On or about December 12, 2014 the Plaintiff was arrested after a call was made to the City of Sanford. Officer Ricks of Sanford took the victims' statements; however, Officer Ricks took the statement with only an incomplete record as recorded by his camera. It appears that Officer Ricks purposefully and maliciously excluded some of the footage from the record for that evening and the following day.

40. The statements made to law enforcement by CORREIA and KELL were sparce on details as the allegations instead focus in on statements that "scarred" CORREIA. Tangibly, the statement from CORREIA of December 12, 2014 accuses Plaintiff of throwing a wet towel at her. (See EXHIBIT)

41. In other words, KELL and CORREIA charged Plaintiff with battery. The statements of CORREIA and KELL made during the course of the charge were contradictory, and in some cases against the laws of physics.

42. For example KELL, in her initial statement to the police, represented that Plaintiff had thrown a wet towel that bounced off of her dog and then hit her mother. Later, and under oath, KELL changed this statement to simply contest that a wet towel was thrown at her mother only.

43.    Plaintiff has always represented, accurately, that no towel was thrown and that no battery took place. This is evidenced by the fact that no towel is shown in the video evidence, that no towel was taken into evidence, and no evidence of any sogginess can be found on the alleged victim in the video footage that does exist. The video footage that does exist was taken from more than one officer, and no evidence of any towel can be found in any of this footage.

44.    KELL and CORREIA would however both make statements to the police accusing Plaintiff of battery.

45.    The statements were made without benefit of a full recording. In the footage that does exist, Officer Ricks permitted the two witnesses to corroborate each others' sworn testimony regarding the events of December 12, 2014. Notably, no footage of any instructions or advice from Officer Ricks to the two witnesses was preserved. The footage in question appears to have been edited out.

46.    By turning off the cameras for large portions of his duties, Officer Ricks violated the civil rights of the Plaintiff. The City of Sanford and the State of Florida's subsequent actions can only be understood in light of these erroneous actions.

47.    As the statements were made without the police camera being turned on, Plaintiff made the Sanford Police Department aware of the discrepancy. Due to the background and education of Plaintiff, Plaintiff was immediately aware of the violation of Officer Ricks and, by extension, the City of Sanford Police Department. The Plaintiff therefore called Officer Ricks out on the violation.

48.    This infraction would later lead to the City of Sanford Police Department to attempt to retaliate against Plaintiff, as can be seen from the events as more fully detailed below.

Unfortunately, the City of Sanford, and ultimately, the State of Florida would react defensively rather than questioning the original decisions that led to the unjust detention of the Plaintiff.

49.     In this regard, the situation is not dissimilar to the famous Dreyfus Affair in that law enforcement would stubbornly cling to its initial decision and would stack the proverbial decks against Plaintiff, ultimately seeking to protect their own rather than to pursue justice.

50.     CORREIA did not stop after the initial charge against Plaintiff. Rather CORREIA filed an injunction against Plaintiff in December of 2014. The Domestic Relations Court granted a temporary injunction only due to the gravity of the allegations and set a hearing on making the Injunction permanent.

51.     CORREIA and KELL would both testify, and would both open themselves up to liability by admitting to engaging in criminal acts at this hearing. The Domestic Relations Court consequently dismissed the Injunction. The judge who is a mandatory reporter along with other mandatory reporters failed to report the testimony to Department of Children And Families.

52.     The State of Florida and the City of Sanford corporately, and the individuals who work for the State of Florida and the City of Sanford, know, or should have known the details of the testimony given at this first Injunction hearing.

53.     Despite the State of Florida and/or the City of Sanford's knowledge or constructive knowledge of the testimony given at the first Injunction hearing, neither the State of Florida or and/or the City of Sanford did anything to act against the illegal acts perpetrated by CORREIA and/or KELL.

54.     The details of the first injunction are worth noting as the events in question highlight the credibility of Plaintiff's accusers, and help to throw into stark relief the denial of Plaintiff's civil rights.

55.     Simultaneously, CORREIA pursued an action for divorce.   CORREIA, through her attorney, attempted to use the criminal case to obtain leverage in the Domestic Relations case. In fact, the attorney for CORREIA contacted Plaintiff's then attorney asking if, in light of the charges, Plaintiff would settle the Domestic Relations matter quickly.  Subsequently, but separate from this action, the attorney in question would be publicly reprimanded for using the threat of a criminal case on more than one occasion as noted by the Florida Bar.

56.     In light of the extraordinary statements of CORREIA's attorney, it is suggested that CORREIA's plan was to abuse the criminal process in order to obtain a more favorable divorce settlement that would be in line with her stated goals.

57.     CORREIA however later blamed her initial belligerence on the actions of the City of Sanford.  CORREIA would later repudiate much of her testimony in an email to Plaintiff's then attorney, stating on May 3, 2015 that:

"When things like this happen, especially when your children are involved, there are a lot

of people in your face and in your ear telling you what you 'need' to do and they really put

the fear in you that if you don't do certain things you are failing to protect your children

and you are setting yourself up to be a 'statistic' like other women who fail to take the

steps they need to protect themselves and end up dead.  Glen scared us but he didn't hurt us".

Further, CORREIA stated:

"I don't think that he is getting what he deserves right now with the state pushing forward with the charges against him.. When I questioned it I was advised that they would move forward regardless of how I feel about it and that there is nothing that I can do to change it". (See Exhibit)

58.    The statements of CORREIA clearly lay the blame for escalating the situation at the "people in your face and in your ear telling you what you 'need' to do".    The logical interpretation of this statement from CORREIA is that Officer Ricks escalated the situation by giving CORREIA a parade of horribles if CORREIA did not act to place the Plaintiff into custody. Unfortunately, we will never know the truth of what transpired as the camera was turned off during a significant portion of the course of the statements.

59.    CORREIA ultimately would prove to be less than confident in her testimony. CORREIA's battery case was ultimately dismissed after CORREIA was ordered to give testimony under oath.  Once placed under oath, CORREIA declined to prosecute on August 14, 2015.

60.    The State of Florida would also appear to be less than enthusiastic in its prosecution, referencing the actions in this case with the preface of "As petty as this case is" in a domestic violence case.

61.    Thus, neither CORREIA nor the State of Florida seemed to believe that this action was a life or death situation as allegedly conveyed to CORREIA by Officer Ricks and his associates at the time of the arrest.

62.    In light of Officer Ricks' manipulation or manual editing of his camera footage, Plaintiff would make the City aware of the situation on multiple occasions. Officer Ricks would subsequently be let go from the City of Sanford police department on or around November of 2015 based in part, but not wholly, on the reports from Plaintiff and others. Officer Ricks would not help himself by appearing publicly with a death metal band performing "Let the Killing Begin". Officer Ricks would later confide to the Plaintiff "You got me" in an online exchange on YouTube.

*The Second Injunction and Stalking Case*

63.    CORREIA continued her actions to attempt to fabricate a record against Plaintiff. CORREIA's efforts coincided, as always with the Holiday Season. Therefore, a second injunction was filed for on December 18, 2015. The Domestic Relations Court, being of full knowledge of the details of this matter, did not issue a temporary injunction and set the matter for hearing in order to compel CORREIA to testify without denying contact between the parties or demanding a cessation of communication.

64.    CORREIA dropped the request for injunction voluntarily on January 13, 2016, days prior to the hearing scheduled for February of 2016 in which she would have been required to testify.

65.    Having made the decision to drop the injunction rather than to testify, CORREIA next filed an action against Plaintiff on the basis of stalking on February 11, 2016. The allegations ultimately concerned a series of text messages that were allegedly sent between November 29, 2015 to December 14, 2015.

66.    The stalking case was not filed in good faith, and were merely a means of attempting to sully the Plaintiffs good name and reputation by a means that did not involve impending testimony by the accuser.

67.    The stalking charges were dropped by the state on December 2, 2016, after almost two years and only after the Plaintiff testified of illegal actions by Officer Robert Durkee and subsequent witnesses to the civil rights violation also testified. The Judge would not allow the testimony.  It is suspected that the Judge was concerned of post convictions appeals based upon Plaintiff's testimony and witness testimony of the illegal and constitutional violations.  The illegal act took place in Sanford on about November 2015, mere weeks after Officer Ricks was fired. Once again, the city of Sanford Officers had the impression they could do what they want with no consequences of violating Plaintiff's Civil rights.

*Second Stalking Case and Predicate*

68.    Individually and corporately, the City of Sanford Police Department and its employees had not forgotten that the actions the Plaintiff had taken had led to the dismissal of one of their own.

59.    Officer DURKEE, an officer within the City of Sanford Police Department, attempted to find a pretext to arrest Plaintiff.    Upon information and belief, DURKEE corresponded with CORREIA to follow Plaintiff to Plaintiff's normal place of dinner.  DURKEE's purpose was to illegally stalk and arrest Plaintiff.

70.    Upon information and belief, DURKEE was attempting a "hook and book" whereby DURKEE would follow Plaintiff looking for an excuse for an arrest.

71.    On November 29, 2015, and at all times relevant on that date, DURKEE turned off his camera as would be made evident later when Plaintiff requested video and CAD regarding the incident.  To be clear, there was no call to respond to.  Defendant Durkee created an alibi for a city service contact with citizen via a "community check" with Firehouse Subs to establish the alibi and reason to be there,.  This incident was in the City and states hands for years and the incident was documented in deleted texts by Defendant Correia, which the state failed to report/refer the illegal activities to the right services and investigative parties.  City of Sanford likewise failed to report/refer the illegal activities to the right services and investigative parties. All this was delivered to the Sheriff's office in Seminole and reported to the city of Sanford to Officer Paul Herx. Intriguingly, the Seminole Sheriff's office forwarded the documents in question to the City of Sanford.

72.    By turning off his camera and pursuing Plaintiff without any crime being committed, DURKEE violated Plaintiff's civil rights. There was no need for DURKEE to run from

Plaintiff confronted him on more than one occasion. There was contact between DURKEE and

Plaintiff at the very spot where DURKEE tried to illegally detain Plaintiff. Once again, DURKEE

refused to turn around and face Plaintiff on an encounter weeks later while wearing a GPS monitor

to establish the coordinates of the contact. He knew that if he turned around, he would have to turn

on his camera for the confrontation.  BOWEN would later be documented in an email stating that

the Plaintiff would try to "get you on camera and speak of the officer's illegal actions" and to be

"careful" when around the Plaintiff.  BOWEN ironically did not do misdemeanor cases on the

norm and performed a cell phone extraction through Cellbrite cell which is usually done during

murders and kidnappings. There is evidence in the cell phone extraction of the Defendant Corriea

cutting and pasting portions of the alleged texts. The city and state had this in their possession for

years. BOWEN was ultimately fired for sending racial motivated and unsensitive texts on more

than one occasion during his work to other officers. Unfortunately, Judge Collins would not allow

impeachment of BOWEN at trial.  During jury selection the son of the Fraternal Order of Police

stated during the selection of jurors, during voir dire, that the juror was very familiar with the

detective and his past discretion. Needless to say the Judge would not allow him on the selection.

Please note that BOWEN, who is very familiar with texts and phones failed to talk with Plaintiff

and or get his phone.  Logically this phone would be the best proof of any activities of Plaintiff.

Further, BOWEN could get cell tower hits to see where Plaintiff's phone was and if the phone was

spoofed or otherwise tampered with. . The lack of expertise in this investigation is surprising given

BOWEN's education and experience. By eye, in the cell phone dump, you can see that CORREIA

manipulated the images of the texts.  CORREIA also produced two years of phone records that

she manipulated and turned over to the state. Plaintiff testified the phone records were altered and

the Judge had to order a new set be ordered from the cell company directly due to distrust of CORREIA. In a deposition, CORREIA accused the State of making the alterations..

73.    At all times relevant, DURKEE was employed by the City of Sanford Police Department.

74.    Later events would lead Plaintiff to conclude that the animosity shown to him by DURKEE was not limited to DURKEE but in fact was widespread among a variety of city and state actors.

75.    Ultimately, Plaintiff confronted DURKEE as Plaintiff had not done anything wrong. DURKEE fled the area.   Witnesses are documentation available to corroborate as to these events.

76.    Plaintiff would later discover DURKEE's cell phone number and would call him to attempt to clarify the incident.   DURKEE would not respond but would state "aren't you that guy from a year ago that we responded to a DV incident" .  And when questioned about the contact with CORREIA, Officer DURKEE could not deny and refused to collaborate the contact between the two. The contact was only 72 hours prior. DURKEE could only recall a vague contact with Plaintiff a year prior. On that contact prior top that year, DURKEE would try to tell Plaintiff what property he would be able to take. Plaintiff replied, please put that on Sanford letter head. And if Plaintiff had been a lay person he would have had his property left behind with CORREIA.  Please note that on the night of this incident, there was no arrest or no contact with CORREIA. CORREIA tried to have the City Officers to order the property division. As mentioned above, a lay person would have their constitutional rights violated by the Officers. Please also note that at the relevant time the City of Sanford was on a corrective action plan to try to stay accredited.

77.     It appears to be a matter of common sense that the "DV" incident would be short for domestic violence, and would refer to the alleged battery from 2014.

78.     DURKEE was not a respondent to the alleged "DV" incident of 2014.   As related above, Officer Ricks was the officer in charge of the alleged "DV" response. Again, Officer Ricks had been subsequently fired by the City of Sanford.

79.     On or around December of 2016 CORREIA attempted to make yet another Complaint against Plaintiff on the basis of stalking.  This time, despite filing, yet again, around the holidays, CORREIA's Complaint was not registered by the Clerk of Court until on or around January 3, 2017.   If there was a fear and concern, why did the Major Crimes Detective not approach and or arrest Plaintiff during the holidays. He waited until the Christmas and New Years celebration through his own lack of concern.

80.     The subsequent case, 2017MM000007A, was a supposed misdemeanor case that was subject to numerous irregularities and ended with the conviction of the Plaintiff under what amounted to a skewed deck.  Among the irregularities committed against Plaintiff during the course of the prosecution of this case:

> a. Witnesses, including Michael Muzeka regularly ignored or otherwise failed to respect subpoenas filed on the Plaintiff's behalf (there were ultimately five (5) filed).
>
> b.     The assistant state attorney, Defendant DAN HERNANDEZ, insisted improperly on a witness list prior to the taking of any testimony.   Four of the five witnesses so listed failed to show, thereby suggesting that the purpose in requesting

such a list was to blunt the attempts of Plaintiff in pursuing testimony that could have exonerated him. (As a note, if the state had requested a similar subpoena and had been thus ignored, it is almost inconceivable that criminal charges would not have been filed.)

c.     Michael Correia received Plaintiff's subpoena but failed to show.

d.     KELL, daughter of defendant CORREIA received Plaintiff's subpoena but failed to show.

e.     Prior to trial Plaintiff would again move to enforce the subpoenas so that Plaintiff could hold the depositions needed to prove his innocence. These were denied.

f.     The initial judge on this case was Judge Krauss. Judge Krauss was not impressed with CORRIA, openly stating in Court that "she is not credible at all".

g.     However, Judge Krauss stated, in open court during the June 26, 2017 hearing that she was receiving "pressure from above" in order to act in Plaintiff's case. It is, as of the date of filing, still uncertain as to from who this "pressure from above" alluded to or on what basis this "pressure from above" derived.

h.     Denial, without explanation, of Plaintiffs request for a copy of the DVD containing alleged evidence to be used against Plaintiff at trial.

i.     Based on the statement that the Judge Krauss was getting "pressure from above" then counsel for Plaintiff felt that he had no alternative but to seek disqualification of Judge Krauss. Judge DeKleva was next appointed to the case.

j.     Judge DeKleva however would not remain on the case for trial and would instead be replaced shortly before trial by Judge Collins. Plaintiff has reason to

believe that Judge Collins was either prejudiced against the Plaintiff, or, perhaps habitually, prejudiced in favor of the prosecution.

k.      Prior to assignment, the prosecution wrote in an email "I hope he gets Collins, she had him the last time". This indicates that a prejudicial party oversaw the latter stages of the case and that Plaintiff could not possibly have received a fair trial. (Please note that in the 2016's first stalking case, both Plaintiff and an additional witness attempted to give testimony regarding DURKEE. This was disallowed. The case was in effect dismissed within 30 days. Please also note that after attempting to give testimony from the Plaintiff and the Plaintiff's witnesses, the judge would not permit this testimony. This testimony would have created numerous post-conviction appeals as to the officers credibility, the City of Sanford's credibility, the State of Florida's credibility, the officers illegal acts, and a series of constitutional violations incurred on November 29, 2015).

l.      Judge Collins, an evidentially prejudiced party according to the prosecution. was suddenly and deliberately reassigned to the case, possibly at prosecutorial request, on or around February 4, 2019. It is uncertain as to whether Judge Collins' sudden appointment was due to the "pressure from above" articulated by Judge Krauss on June 26, 2017. Immediately after Mr. Pickard's conviction, Judge Collins was no longer on the bench. As a note, Judge Collins had previously been publicly reprimanded in 2018 due to her handling of other cases. As a further note, Judge Collins has had, and has, a reputation for being pro-prosecution.

m.      Prior to trial, Judge Collins stated that there would be no further motions in limine. Judge Collins would ultimately only enforce this ruling selectively.

n.      Notwithstanding the above, Judge Collins permitted a last minute in limine motion from the State artificially restricting the scope of the time evidence could be presented. Said information was interrupted in time frame, and consisted of two periods of time in which the state believed the most damning evidence against the Plaintiff could be received by the jury without the benefit of context. Conveniently as would come up in trial when Durkee was on the stand the Officer looked at the Judge and stated when asked about the incident, "I thought we where not going there." A convenient way to not testify to the illegal activities by the State and Judge. This was exparte communication outside of the defense. It is Prima Facie proof that the State and City and Judge all knew this was going to be blocked out. The state in an Digital Message stated, " I don't think we will get the texts in." But the judge allowed them with the huge doubt of the own prosecutors.

o.      A mental health evaluation was ordered by Judge Collins prior to trial. Once the results proved to be positive, it was ignored for further use. The examiner noted, He knows the system very well. And I have seen many illegal and blatantly violations of Civil Rights by Judges and Officers' one event after a Judge called and emergency hearing where the Plaintiff and eight others where ordered into the court only to find that when the Plaintiff disclosed his full name the Judge had to recuse himself immediately, by the mere mention of the Plaintiffs name.

p.      Plaintiff was sentenced to the maximum sentence that could be imposed, despite the fact that the only evidence of the stalking charge consisted of text messages that could easily have been blocked at any time and that the text messages were taken during the course of a limited and interrupted timeframe. All motions

for bond were summarily dismissed. And the fact the state ignored the property and other related disputes between the Plaintiff and Defendant Corriea. The dissolution of marriage while still pending, after months of the initiation of the 2017 case, was not allowed to come in and those requests for money and property the state in collusion with the Judge, would not allow that to be presented to the jury. The Plaintiff was not allowed to even talk about the other bogus cases he had beat.

q       The three investigative reports performed by Jason Bowen were given to the prosecution but not given to Plaintiff in the course of his representation.   This is a discovery violation that should properly have been brought up in a Richardson hearing.

r.      No subpoena or search warrant in the "stalking" case was ever taken against Plaintiff in either case, as there were not enough reasons to proceed against Plaintiff.

s.      In neither case did the State attempt to obtain the actual cell phone from whence the text messages comprising the alleged stalking were allegedly sent.  In criminal terms, this is the equivalent of disposing of the murder weapon during the course of trial.

t.      Plaintiff had paid for an appeal but was told that it was untimely by one day. No materials were sent to Plaintiff's attorney regarding the appeal as is customary. Additionally, in order to count the appeal as one day late, the mail box rule and the intervening holidays must be disregarded.

u.      The decision not to hear the appeal violates the maxim at law that cases should be determined on their merits.  On the contrary, it appears that the Court

bent the law by ignoring the mailbox rule and holidays, and by not sending any customary information regarding the time of appeal to the Plaintiff's attorney in a deliberate attempt to prevent the Plaintiff's second stalking case from being reviewed by any higher authorities.

v.      In other words, the State acted defensively.

w.      By in effect denying the appeal by toying with the procedural requirements, the State violated Plaintiff's civil rights.

81      As a result of the State's improper conviction, Plaintiff suffered:

a.      The unjust loss of his liberty.

b.      The loss of profits Plaintiff could have earned were he not engaged in responses to frivolous complaints.

c.      The loss of reputation

d.      Emotional distress

e.      Other and intangible losses due to actions of the State.

82.     In other words, the City of Sanford and State of Florida prosecuted a case against a law abiding citizen only by ignoring or disallowing all factors that might have been taken in a light favorable to the Plaintiff.  Plaintiff was not permitted to take on a defense, at least one judge spoke openly of being "pressured from above" and the ultimate judge appointed had a seal of approval from the prosecution on the basis of being hostile to the Plaintiff.

83      The City of Sanford and State of Florida therefore acted in such a way as to induce their preferred verdict rather than to permit a fair trail to take place.

84.    While the rationale is unknown, it is suspected, upon information and belief, that the City of Sanford was attempting to cover its tracks in its initial and improperly processed arrest of Plaintiff.    Once the City of Sanford and State of Florida realized that the City of Sanford and State of Florida may be liable due to their treatment of Plaintiff, all named actors moved forward in concert with CORREIA to obtain a guilty verdict regardless of the facts on the ground.

85.    The purpose of obtaining a guilty verdict was to prevent liability from accruing to the City of Sanford, the State of Florida, and all relevant actors pertaining thereto. And the incarceration would not allow a Pro Se defendant, the abilities to investigate, depos and file suit for the illegal actions. Thus, dividing the property via criminal charges instead of DOM.

86.    Due to the multiple irregularities during the course of the trial, Plaintiff suffered deprivation of Plaintiff's Civil Rights.

87.    In other words, the city and state entities improperly and deliberately chose to try to protect themselves via the conviction of an innocent man. The city and state Defendants were aware, at all times relevant that they held 8000 pages testifying to illegal acts by CORREIA.  There are even documented episodes of violations of intellectual property rights and work product privileges by the Defendant CORREIA and her employer located inside of the 8000 pages in question.  These documents also reference another major law firm they know of and is documented in a text authored by Defendant CORREIA about the theft of intellectual property and the enrichment of monies to her employer. The State and City failed once again to let the companies know of the wrongful activities. It is primia facie that the City actors and State actors would and did overlook any reputational concerns of the alleged victim to garner an incarceration of the Plaintiff.. It is strongly suspected that the state was concerned on their prosecution rates and the

City did not like the Plaintiff and his abilities to garner very sensitive information on then along with the state.

88.     The interference in the impartial process of law also extended to the attempted appeal by Plaintiff. Ultimately the Plaintiff's attempt to appeal was improperly denied as being untimely based upon.

a.      Ultimately the Fifth DCA denied the appeal as untimely, however:

b.      The rules provided that the notice of appeal was alleged to have been delivered on 1/11/2021. This would have been within the time for appeal taking into account either the mailbox rule or the intervening of various holidays.  This was to alleviate the Plaintiff from suing them as all the corrupt actors have participated in the nefarious scheme. Sinking so the extreme of participating in administrative fraud for the appeal.

89.     By denying the appeal, Plaintiff's civil rights were violated.

90.     At all times relevant all actors were under the supervision of the State of Florida or the City of Sanford.

91.     The City of Sanford and the State of Florida are responsible, corporately, for the actions of their agents.

92.     Due to the actions of the Defendants, corporately, Plaintiff lost his residence.

93.     The foreclosure in question on Plaintiff's residence was itself subject to a number of irregularities including:

a.      The action for foreclosure was filed in a court that did not have subject matter jurisdiction and was improperly to remove the res from the jurisdiction of the Domestic division.

b.    As this matter was not removed from the Domestic division the Plaintiff never resolved any question as to his interest in the property.

c.    Thus, there was no divorce decree determining the ownership of the mortgage.    Nevertheless, PennyMac stated that the property had been signed off by Plaintiff.  This was untrue.

d.    The resulting sale was finalized on October 1st, 2019 when the satisfaction of lien was recorded.  Plaintiff was released from his improper incarceration on that same date.

e.    Thus, Plaintiff's interest in the property was fraudulently transferred out of Plaintiff's name on the date of his release from incarceration.  This was not accidental.

f.    Upon information and belief, the real estate agent representing the seller was the boyfriend of KAYLA KELL, a Mr. Luke P. Miller.  Upon further information and belief this transaction was facilitated by KAYLA KELL.  Thus KAYLA KELL and LAURA KELL worked together in order to fraudulently in order to deprive Plaintiff of Plaintiff's property.

g.    This matter is documented.  Previously, on or around July 11, 2016, Plaintiff had defended his rights on the property in Court in the case of PennyMac Loan Services LLC. v. Laura Pickard, etc. et al, Case No. 2016-CA-001473-14N-G.

h.    Upon information and belief, the STATE OF FLORIDA and the CITY OF SANFORD, its respective officers, employees and agents, were aware of all events as laid out above.

## COUNT I:  FALSE IMPRISONMENT AGAINST THE CITY OF SANFORD DEFENDANTS

94.     This is a cause of action for false arrest/false imprisonment and detention against the CITY OF SANFORD DEFENDANTS   Plaintiff re-alleges the allegations contained in paragraphs one (1) through Ninety-Three (93) as if fully set forth below, and further Plaintiff alleges:

95.     On or about December 12, 2014, the CITY OF SANFORD DEFENDANTS, through its employees and agents acting in the course and scope of their duties as police caused Plaintiff to be deprived of his freedom and liberty and restrained him in his movements at the scene of arrest and detention and continuing until his release.

96.     Plaintiff was subsequently incarcerated unjustly in 2019, and was incarcerated for 364 days.   However, due to Plaintiff's exemplary conduct while incarcerated, Plaintiff was out within 10 months.   This sentence was made on the basis of an incomplete record and after proceedings that were clearly slanted against the Plaintiff for reasons as set forth in more detail above.  In fact, it should be mentioned that at a subsequent hearing after sentencing Judge Collins expressed her grave disappointment in finding out that the Plaintiff would not serve the full 364 days in jail, and at another hearing Judge Collins stated that she would have given the plaintiff more (time) if she could.  Therefore, it appears evident that Judge Collins was biased against Plaintiff from the start, and was not interested in the impartial dispensing of justice.

97.     Plaintiff did not consent to the aforementioned actions of Defendant City of Sanford, its employees and agents, and said actions were against the will of Plaintiff.

98.     The restraint and arrest of Plaintiff by Defendant City of Sanford, through its employees and agents acting in the course and scope of their duties as police was unlawful, and was not based upon any lawfully issued process of court which was based upon facts and evidence to support probable cause.

99.     The restraint of Plaintiff was caused by Defendant City of Sanford, through its employees and agents acting in the course and scope of their duties as police Defendants, and was unlawful.

100.    As a direct and proximate result of Defendant of City of Sanford's actions through its employees and agents for which Defendant City of Sanford is responsible, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, loss of income, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue in the future.

WHEREFORE, for the foregoing reasons, Plaintiff, WILLIAM GLENN PICKARD, respectfully requests this Court to enter Judgment upon Defendant, THE CITY OF SANFORD, a municipal corporation of the State of Florida for damages and costs in the prosecution of this matter and such other and further relief as this Court deems just and proper under the circumstances.

### COUNT II: MALICIOUS PROSECUTION (AS AGAINST THE STATE OF FLORIDA DEFENDANTS)

101.    This is a cause of action for malicious prosecution against Defendant Phil Archer.

102.    Plaintiff re-alleges the allegations contained in paragraphs one (1) through forty-four (44) as if fully set forth herein.

103.    STATE OF FLORIDA DEFENDANTS owed a duty of care to the citizenry in general, and specifically, in this case, to the Plaintiff.

104.    On or about January 3, 2017, STATE OF FLORIDA DEFENDANTS, collectively, PHIL ARCHER, DANIEL HERNANDEZ, DAVID WHATLEY, and OLIVIA YERGEY, individually, with malicious purpose caused a prosecution to be instituted against Plaintiff.

105.    Said prosecution was instituted without probable cause by STATE OF FLORIDA DEFENDANTS and the facts known by STATE OF FLORIDA DEFENDANTS would not have warranted a reasonable person to believe that any criminal offense had been committed by Plaintiff. This is particularly the case considering the great number of actions, both civil and criminal, that had been attempted to be instituted by CORREIA in the two to three years prior to the 2017 Complaint.

106.    There was absence of probable cause to arrest and prosecute Plaintiff and for the continued prosecution against Plaintiff.

107.    Defendants acted maliciously and in bad faith against the Plaintiff at all times mentioned herein. No prosecution of Plaintiff would have occurred but for the actions of Defendants.

108.    As a direct result of Defendant's actions, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue in the future.

109.    Plaintiff also suffered damages as the result of being forced to hire counsel and incur attorney's fees and costs to defend the prosecution.

WHEREFORE, for the foregoing reasons, Plaintiff, WILLIAM GLENN PICKARD, respectfully requests this Court to enter judgment against Defendants, corporately and individually, for their conduct, which would deter them and others from such conduct in the future.

## COUNT III: FALSE ARREST
### (AS AGAINST THE CITY OF SANFORD FOR THE ARREST OF JANUARY 3, 2017)

110.    This is a cause of action for false arrest/false imprisonment and detention against Defendant CITY OF SANFORD for damages.

111.    Plaintiff re-alleges the allegations contained in paragraphs one (1) through forty-four (44) as if fully set forth herein.

112.    On or about January 3, 2017 the actions of Defendant CITY OF SANFORD caused Plaintiff to be deprived of his freedom and liberty and caused his to be restrained in his movements at the scene of his arrest and detention and continuing until he was released from jail.

113.    The restraint of Plaintiff was caused by the actions of Defendant CITY OF SANFORD individually and was unlawful.

114.    As a direct and proximate cause of Defendant CITY OF SANFORD's actions, Plaintiff was illegally detained and arrested and was forced to be incarcerated.

115.    As a direct result of Defendant CITY OF SANFORD's actions, Plaintiff has suffered damages which include physical inconvenience, physical discomfort and pain, physical suffering, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, loss of income, economic damages, loss of business, the economic, physical and emotional aspects of which are continuing to this day and are likely to continue in the future.

116.    The actions of Defendant CITY OF SANFORD were done in bad faith, with malice, and in reckless disregard for rights of Plaintiff.

WHEREFORE, for the foregoing reasons, Plaintiff, WILLIAM GLENN PICKARD, respectfully requests this Court to enter Judgment against Defendant, CITY OF SANFORD, for damages and costs in the prosecution of this matter and such other further relief as this Court deems just and proper under the circumstances. Further Plaintiff, WILLIAM GLENN PICKARD, seeks an award of punitive damages to punish Defendant, PHIL ARCHER for his conduct, which would deter him and others from such conduct in the future.

### COUNT IV: INVASION OF PRIVACY
### (AS AGAINST THE CITY OF SANFORD AND ROBERT DURKE)

117.    This is an action for invasion of privacy against DURKE and for damages.

118.    Plaintiff re-alleges the allegations contained in Paragraphs one (1) through forty-four (44) as if fully set forth herein.

119.    Plaintiff is guaranteed the right to privacy and the right to be let alone and free from governmental intrusion into his private life.

120.    On or about November 29, 2015, approximately two weeks after firing of Officer Ricks from the City of Sanford Police Department based on conduct evidenced by RICKS' interaction with Plaintiff, Defendant DURKE, acting within the course and scope of his employment, and under the color of law, did violate Plaintiff's right to privacy. Defendant DURKE intruded into Plaintiff's solitude and seclusion when Defendant DURKE purposefully waited outside Plaintiff's place of dining without probable cause that Plaintiff had committed any crime. Further, there was no exigent circumstances, no consent and no warrant to allow such conduct. Defendant Durkee also colluded with he State, City and the Judge to avoid having to disclose his illegal actions to save post convictions appeals of all his cases.

121.    . Defendant, DURKE, acted maliciously and in bad faith against the Plaintiff at all times mentioned herein.

122.    As a direct and proximate result of Defendant DURKE's actions, Plaintiff has suffered damages, which include loss of time, loss of income, economic loss, loss of business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

123.    DURKE has refused to testify as to this information despite subpoenas to appear for deposition.

WHEREFORE, for the foregoing reasons, Plaintiff, WILLIAM GLENN PICKARD, respectfully requests this Court to enter judgment against Defendant, DURKE, an individual, for all compensatory damages, all costs of this action, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT V: 42 USC 1983 (VIOLATION OF DUE PROCESS) (AS AGAISNT THE STATE OF FLORIDA DEFENDANTS)

124.    This is a cause of action for violation of civil rights under 42 USC Section 1983 against all defendants.

125    Plaintiff re-alleges the allegations contained in Paragraphs one (1) through forty-four (44) above as if fully set forth herein.

126.    Plaintiff has the right under the Constitution of the United States to obtain a fair trial in accordance with due process of law (See U.S. Const. Amend V).

127.    The City of Sanford, PHIL ARCHER, the State of Florida, DANIEL HERNANDEAZ, and other state actors owed a duty of care to the citizenry in general, and specifically, in this case, owed a duty of care to the Plaintiff.

128.    On or about January 3, 2017, Defendant ARCHER, with malicious purpose, caused a prosecution to be instituted against Plaintiff.

129.    Said prosecution was instituted without probable cause by Defendant ARCHER, and the facts known by him would not have warranted a reasonable person to believe that any criminal offense had been committed by Plaintiff.

130.    There was an absence of probable cause to arrest and prosecute Plaintiff, and for the continued prosecution against Plaintiff.

131.    Defendants acted maliciously and in bad faith against the Plaintiff at all times mentioned herein.  No prosecution of Plaintiff would have occurred but for the actions of Defendants.

132.    Defendants repeatedly violated Plaintiff's rights to due process as more fully set forth above.

133.    As a direct result of Defendants, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue in the future.

134.    Plaintiff has also suffered damages as the result of being forced to hire counsel and incur attorney's fees and costs to defend the prosecution.

### COUNT VI:  42 USC 1983 (VIOLATION OF DUE PROCESS) (AS AGAINST THE STATE OF FLORIDA DEFENDANTS)

135.    This is a cause of action for violation of civil rights under 42 USC 1983 against the State of Florida Defendants for their actions taken to hinder Plaintiff in pursuing his appeal.

136.    Plaintiff realleges the allegations contained in Paragraph one (1) through forty-four (44) as if fully pled forth herein.

137.    Plaintiff has the right under the Constitution of the United States to obtain a fair trial in accordance with due process of law (see Amendment V of the Constitution).

138.    Upon information and belief, the State of Florida, PHIL ARCHER, and DANIEL HERNANDEZ prevented Plaintiff from obtaining an appeal regarding Plaintiff's unjust verdict.

139.    The State of Florida, PHIL ARCHER and DANIEL HERNANDEZ and other state actors owed a duty of care to the citizenry in general and specifically, in this case, owed a duty of care to the Plaintiff.

140.    Plaintiff was denied an appeal for being one day untimely despite the mailbox rule and despite the intervening holidays.    This was improper under the procedures of the State of Florida.

141.    Plaintiff's then attorney did not receive the proper notification regarding time to appeal.  This was improper under the procedures of the State of Florida.

142.    Defendants acted maliciously and in bad faith against the Plaintiff at all times mentioned herein.   The actions of the Defendants prevented Plaintiff from properly exercising his rights and from correcting an unjust verdict and sentence.

143.    As a direct result of Defendants actions, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue in the future.

## COUNT VII:  CONSPIRACY, MALICIOUS PROSECUTION (AGAINST ALL DEFENDANTS)

144.    This is a cause of action for Conspiracy for Malicious Prosecution against all Defendants.

145.    Plaintiff realleges and restates the allegations contained in paragraphs 1-77 as if fully pled herein.

146.    All defendants engaged in conspiracy to maliciously prosecute Plaintiff for a misdemeanor.

147.    All defendants acted in concert in order to bring about their premeditated result.

148.    As a direct result of defendants actions, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

## COUNT VIII:  VIOLATION OF CIVIL RIGHTS UNDER THE FIFTH AND FOURTEETH AMENDMENTS TO THE U.S. CONSTITUTION (AS AGAINST STATE DEFENDANTS)

149.    This is a cause of action for violation of civil rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

150.    Plaintiff realleges paragraph one (1) through seventy-seven (77) as if fully pled herein.

151.    The Fifth Amendment of the Constitution guarantees due process of law.  The Fourteenth Amendment extends this protection to the State of Florida.

152.    At numerous times during the course of the trial, and again during the appeal process Plaintiff's rights to due process were violated as more fully detailed above.

153.    The violations of Plaintiff's civil rights were deliberate.

154.    The violations of Plaintiff's civil rights were malicious.

155.    As a direct result of State Defendants actions, Plaintiff has been denied his civil rights.

156.    As a direct result of State Defendants actions, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, and disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

## COUNT IX:  CONSPIRACY TO VIOLATE PLAINTIFFS CIVIL RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION (AS AGAINST THE STATE DEFENDANTS AND CORREIA)

157.    This is a cause of action for conspiracy to violate Plaintiff's civil rights in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

158.    Plaintiff realleges paragraphs one (1) through seventy-seven (77) as if fully pled herein.

159.    The Fifth Amendment of the Constitution guarantees due process of law.  The Fourteenth Amendment extends this protection to the State of Florida.

160.    Agents for the State colluded and conspired with CORREIA and each other in order to bring about the unjust conviction of Plaintiff.   Said actions include but are not limited to providing pressure on judges "from above", ignoring the criminal actions of CORREIA despite knowledge, real or actual of said actions, denying Plaintiff rights to appeal, and other matters as listed more fully in paragraphs one (1) through seventy-seven (77) above.

161.    The conspiracy to violate Plaintiff's civil rights was deliberate.

162.    The conspiracy to violate Plaintiff's civil rights was malicious.

163.    As a direct result of the actions of the State Defendants and CORREIA, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, and disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

### COUNT X:  ABUSE OF PROCESS (AS AGAINST STATE DEFENDANTS. CORREIA, AND CITY OF SANFOD DEFENDANTS)

164.    This is a Count for abuse of process against the State of Florida Defendants and the City of Sanford Defendants.

165.    Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully pled herein.

166.    State Defendants and City of Sanford Defendants have abused the process of law.

167.    The actions of the State Defendants, CORREIA, and City of Sanford Defendants were deliberate.

168.    The actions of the State Defendants, CORREIA and the City of Sanford Defendants were malicious.

169.    As a direct result of the actions of the State Defendants COREEIA, and the City of Sanford Defendants, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, and disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

**COUNT XI:  CONSPIRACY FOR FALSE ARREST/FALSE IMPRISONMENT**
**(AS AGAINST CORREIA AND CITY OF SANFORD DEFENDANTS)**

170.    This is a Count for conspiracy for false arrest against CORREIA and the City of Sanford Defendants.

171.    Plaintiff re-alleges paragraphs one (1) through seventy-seven (77) as if fully pled herein.

172.    CORREIA acted in concert with City of Sanford Defendants to effect a false arrest of Plaintiff.

173.    The actions of CORREIA and the City of Sanford Defendants were deliberate.

174.    The actions of CORREIA and the City of Sanford Defendants were malicious.

175.    As a direct result of the actions of the City of Sanford Defendants, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, and disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

**COUNT XII:  VIOLATION OF CONSTITUTIONAL RIGHTS UNDER**
**AMENDMENTS IV AND XIV OF THE UNITED STATES CONSTITUTION (AS**
**AGAINST CITY OF SANFORD DEFENDANTS)**

176;    This is a Count for Violation of Constitutional Rights under Amendments IV and XIV of the United States Constitution as against the City of Sanford Defendants.

177.    Plaintiff re-alleges and re-states paragraphs one (1) through seventy-seven (77) as if fully pled herein.

178.    The Fourth Amendment of the Constitution of the United States prohibits unreasonable searches and seizures of people and property.

179.    The Fourteenth Amendment of the United States Constitution applies the Bill of Rights to the States.

180.    The actions of the City of Sanford Defendants were deliberate.

181.    The actions of the City of Sanford Defendants were malicious.

182.    Due to the actions of the City of Sanford Defendants, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, and disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

## COUNT XIII:  CONSPIRACY TO VIOLATE THE IV AND XIV AMENDMENT RIGHTS OF PLAINTIFF (AS AGAINST CORREIA AND THE CITY OF SANFORD DEFEDNANTS)

183.    This is a Count of Conspiracy to Violate the Fourth and Fourteenth Amendment Rights of Plaintiff.

184.    Plaintiff re-alleges and re-states paragraphs one (1) through seventy-seven (77) as if fully pled herein.

185.    The actions of CORREIA and the City of Sanford were deliberate.

186.    The actions of CORREIA and the City of Sanford were malicious.

187.    Due to the actions of the CORREIA and the City of Sanford, Plaintiff has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, economic loss, loss of business, mental suffering, embarrassment, humiliation, and disgrace and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue into the future.

## COUNT XIV:  MORTGAGE FRAUD (AS AGAINST CORREIA AND KELL)

188.   This is a Count for mortgage fraud as against CORREIA and KELL.

189.   Plaintiff re-alleges and re-states paragraphs one (1) through ninety-three (93) as if fully pled herein, and in addition alleges:

190.   Upon information and belief, CORREIA and KELL worked together in order to effect the fraudulent transfer of Plaintiff's property.

191.   Defendants CORREIA and KELL engaged in a purposeful and systematic course of conduct in order to deprive Plaintiff of Plaintiff's property.

192.   Defendants CORREIA and KELL acted with the intent to defraud or with the intent to obtain property by false of fraudulent pretenses, representations, or promises or willful misrepresentations of their actions.

193.   Defendants CORREIA and KELL's actions resulted in the permanent deprivation of Plaintiff's rights to or benefits from Plaintiff's property.

194.   The effect of Defendants CORREIA and KELL's actions was to appropriate Plaintiff's property to CORREIA and KELL's for CORREIA's own use.   CORREIA was not entitled to this use of the property. *See Louberti v. State,* 895 So.2d 479, 480-81 (Fla. 4th DCA 2005).

195.   The actions of CORREIA and KELL were deliberate.

196.   The actions of CORREIA and KELL were malicious.

197.   Due to the actions of CORREIA and KELL, Plaintiff has suffered damages, which include loss of property, loss of use of property, economic loss, loss of time, loss of chattels, mental suffering, humiliation, disgrace, and injury to Plaintiff's feelings and reputation, the effects of which continue to this day and are likely to continue into the future.

### COUNT XV:  CONSPIRACY TO COMMIT MORTGAGE FRAUD (AS AGAINST CORREIA AND KELL)

198.    This is a Count for Conspiracy to Commit Mortgage Fraud as against CORREIA and KELL.

199.    Plaintiff reincorporates paragraphs one (1) through ninety-three (93) as if fully pled below, and further alleges:

200.    Upon information and belief, CORREIA and KELL worked together in order to fraudulently deprive Plaintiff of his just interest in Plaintiff's real property.

201.    Upon information and belief, CORREIA and KELL were successful in depriving Plaintiff of his just interest in Plaintiff's real property.

202.    The actions of CORREIA and KELL were deliberate.

203.    The actions of CORREIA and KELL were malicious.

204.    Due to the deliberate and malicious actions of CORREIA and KELL, Plaintiff has been damaged.

205.    Due to the actions of CORREIA and KELL, Plaintiff has suffered damages, which include loss of property, loss of use of property, economic loss, loss of time, loss of chattels, mental suffering, humiliation, disgrace, and injury to Plaintiff's feelings and reputation, the effects of which continue to this day and are likely to continue into the future.

### COUNT XVI:  ABUSE OF PROCESS AS REGARDING MORTGAGE FRAUD (AS AGAINST STATE OF FLORIDA DEFENDANTS)

206.    This is a count of Abuse of Process regarding Mortgage Fraud as against the State of Florida Defendants.

207.    Plaintiff reincorporates paragraphs one (1) through ninety-three (93) as if fully pled forth herein, and further alleges:

208.    STATE OF FLORIDA Defendants owed a duty of care to the public at large, and more specifically, to the Plaintiff.

209.    Upon information and belief STATE OF FLORIDA Defendants were aware of the attempts, ultimately successful, of the mortgage fraud perpetrated by CORREIA and KELL.

210.    Upon information and belief, STATE OF FLORIDA Defendants did not do anything to stop said mortgage fraud despite being aware of said mortgage fraud.

211.    Upon information and belief, STATE OF FLORIDA Defendants in fact encouraged said fraud by (1) having full knowledge of the fraud being attempted to be perpetrated upon Plaintiff, (2) doing nothing to challenge same, and (3) incarcerating Plaintiff unjustly so that Plaintiff was incapable of stopping said mortgage fraud.

212.    Due to the actions of STATE OF FLORIDA Defendants, Plaintiff has suffered damages, which include loss of property, loss of use of property, economic loss, loss of time, loss of chattels, mental suffering, humiliation, disgrace, and injury to Plaintiff's feelings and reputation, the effects of which continue to this day and are likely to continue into the future.

WHEREFORE, for the foregoing reasons, Plaintiff, WILLIAM GLENN PICKARD, respectfully request this Court to enter Judgement against Defendants for damages and costs in the prosecution of this matter, expenses incurred in defending the prosecution and for such other and further relief as this Court deems just and proper under the circumstances. Further, Plaintiff, WILLIAM GLENN PICKARD, seeks an award of punitive damages to punish Defendants for their conduct, which would deter them and others from such conduct in the future.

## JURY DEMAND

Plaintiff demands a jury for all issues triable as of right by Jury.


Dated this 6th day of February, 2023.

_____
William Glenn Pickard, Pro Se